JS 44  (Rev. 06/17)

**MSG**

**CIVIL COVER SHEET**

17-CV-2676

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**17  2676**

## I. (a) PLAINTIFFS

Robert Berg

**(b)** County of Residence of First Listed Plaintiff   Milwaukee Cty. WI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Richard A. Maniskas (PA Bar No. 85942), RM LAW, P.C.
1055 Westlakes Drive, Suite 3112, Berwyn, PA 19312
(484) 324-6800

**DEFENDANTS**
VWR Corporation, Harry M. Jansen Kraemer, Jr., Nicholas W. Alexos,
Robert L. Barchi, Edward A. Blechschmidt, Manuel A.H. Brocke-Benz,
Robert P. DeCresce, Pamela Forbes-Lieberman, et al.

County of Residence of First Listed Defendant   Montgomery Cty. PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
  Plaintiff
- ☒ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government
  Defendant
- ☐ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1391

Brief description of cause:
Claims for violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE                DOCKET NUMBER

JUN 13 2017

DATE   6/13/17

SIGNATURE OF ATTORNEY OF RECORD

S.T

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

UNITED STATES DISTRICT COURT

**17    2676**

FOR THE EASTERN ~~DISTRICT OF PENNSYLVANIA~~ — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  4881 N. 55th St. Milwaukee, WI 53218

Address of Defendant:  Radnor Corporate Center, Building One, Suite 200, 100 Matsonford Road, Radnor, PA 19087

Place of Accident, Incident or Transaction:   PA
_____
                    *(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))                   Yes☐   No **X**

Does this case involve multidistrict litigation possibilities?                                          Yes☐   No **X**
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____     Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously sterminated action in this
   court?                                                                      Yes☐   No **X**
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated
   action in this court?                                                       Yes☐   No**X**
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously
   terminated action in this court?                                            Yes☐   No **X**

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                                                                               Yes☐   No **X**

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*                                B. *Diversity Jurisdiction Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts    1. ☐ Insurance Contract and Other Contracts
2. ☐ FELA                                                   2. ☐ Airplane Personal Injury
3. ☐ Jones Act-Personal Injury                              3. ☐ Assault, Defamation
4. ☐ Antitrust                                              4. ☐ Marine Personal Injury
5. ☐ Patent                                                 5. ☐ Motor Vehicle Personal Injury
6. ☐ Labor-Management Relations                             6. ☐ Other Personal Injury (Please specify)
7. ☐ Civil Rights                                           7. ☐ Products Liability
8. ☐ Habeas Corpus                                          8. ☐ Products Liability — Asbestos
9. ☐ Securities Act(s) Cases                                9. ☐ All other Diversity Cases
10. ☐ Social Security Review Cases                              (Please specify) _____
11. **X** All other Federal Question Cases
    (Please specify) _____Securities/Commodities/Exchange_____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I,  Richard A. Maniskas  , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE:  June 13, 2017        _____        PA Bar No. 85942
                                  Attorney-at-Law                Attorney I.D.#
      NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**JUN 13 2017**

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  June 13, 2017        _____        PA Bar No. 85942
                                  Attorney-at-Law                Attorney I.D.#

CIV. 609 (5/2012)



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| ROBERT BERG | : | CIVIL ACTION |
| v. | : | **17   2676** |
| VWR CORPORATION | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.      ( )

| | | |
|---|---|---|
| June 13, 2017 | Richard A. Maniskas | Plaintiff, Robert Berg |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (484) 324-6800 | (484) 631-1305 | rm@maniskas.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

JUN 13 2017



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>VWR CORPORATION, HARRY M. JANSEN KRAEMER, JR., NICHOLAS W. ALEXOS, ROBERT L. BARCHI, EDWARD A. BLECHSCHMIDT, MANUEL A.H. BROCKE-BENZ, ROBERT P. DECRESCE, PAMELA FORBES-LIEBERMAN, TIMOTHY P. SULLIVAN, ROBERT J. ZOLLARS, AVANTOR, INC., VAIL ACQUISITION CORP., and NEW MOUNTAIN CAPITAL L.L.C., )<br><br>Defendants. ) | **17      2676**<br><br>Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION<br><br>**FILED**<br>JUN 13 2017<br>By KATE BARKMAN, Clerk<br>Dep. Clerk |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on May 5, 2017 (the "Proposed Transaction"), pursuant to which VWR Corporation ("VWR" or the "Company") will be acquired by Avantor, Inc. ("Parent") and Vail Acquisition Corp. ("Merger Sub"), affiliates of New Mountain Capital L.L.C. ("New Mountain Capital," and together with Parent and Merger Sub, "Avantor").

2.      On May 4, 2017, VWR's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

Agreement"). Pursuant to the terms of the Merger Agreement, Avantor will acquire all of the outstanding shares of VWR common stock for $33.25 per share in cash.

3.      On June 2, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement, and that the stockholder vote should be enjoined until defendants disclose the material information sought herein.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of VWR common stock.

9.      Defendant VWR is a Delaware corporation and maintains its principal executive offices at Radnor Corporate Center, Building One, Suite 200, 100 Matsonford Road, Radnor, Pennsylvania 19087.  VWR's common stock is traded on the NasdaqGS under the ticker symbol "VWR."

10.     Defendant Harry M. Jansen Kraemer, Jr. ("Kraemer") is a director and Chairman of the Board of VWR.  According to the Company's website, Kraemer is a member of the Nominating and Governance Committee.

11.      Defendant Nicholas W. Alexos ("Alexos") is a director of VWR.  According to the Company's website, Alexos is a member of the Finance Committee.

12.     Defendant Robert L. Barchi ("Barchi") is a director of VWR.  According to the Company's website, Barchi is a member of the Audit Committee.

13.      Defendant Edward A. Blechschmidt ("Blechschmidt") is a director of VWR. According to the Company's website, Blechschmidt is Chair of the Audit Committee.

14.     Defendant Manuel A.H. Brocke-Benz ("Brocke-Benz") is a director of VWR and has served as President and Chief Executive Officer ("CEO") since January 2013.  According to the Company's website, Brocke-Benz is Chair of the Finance Committee.

15.     Defendant Robert P. DeCresce ("DeCresce") is a director of VWR.  According to the Company's website, DeCresce is a member of the Compensation Committee.

16.     Defendant Pamela Forbes-Lieberman ("Forbes-Lieberman") is a director of VWR. According to the Company's website, Forbes-Lieberman is a member of the Audit Committee.

17.     Defendant Timothy P. Sullivan ("Sullivan") is a director of VWR.  According to the Company's website, Sullivan is Chair of the Compensation Committee and a member of the Nominating and Governance Committee and the Finance Committee.

18.     Defendant Robert J. Zollars ("Zollars") is a director of VWR.  According to the Company's website, Zollars is Chair of the Nominating and Governance Committee and a member of the Compensation Committee.

19.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20.     Defendant Parent is a Delaware corporation, an affiliate of New Mountain Capital, and a party to the Merger Agreement.

21.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, an affiliate of New Mountain Capital, and a party to the Merger Agreement.

22.     Defendant New Mountain Capital is a New York-based investment firm.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of VWR (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of the close of business on April 28, 2017, there were approximately 131,694,581 shares of VWR common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel

experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

### SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

30.     VWR is a global independent provider of product and service solutions to laboratory and production customers.

31.     With sales in excess of $4.5 billion in 2016, the Company enables science for customers in the pharmaceutical, biotechnology, industrial, education, government, and healthcare industries.  VWR's differentiated services provide innovative, flexible, and customized solutions from scientific research services to custom-manufactured chemical blends.

32.     On February 24, 2017, VWR issued a press release wherein it reported its financial results for the fourth quarter and full year ended December 31, 2016.  The Company reported fourth quarter record quarterly net sales of $1.13 billion, up 1.6% year-over-year, and up 1.0% on

an organic basis.  Fourth quarter EMEA-APAC segment net sales increased 0.4%, up 3.6% on an

organic basis, while the Americas segment net sales increased 2.5%.  Full year net sales increased

4.5% to $4.51 billion, up 3.2% on an organic basis, and full year adjusted earnings per share were

$1.72, which increased 13.2% compared to $1.52 in 2015.  With respect to the financial results,

Individual Defendant Brocke-Benz commented:

> In 2016 we reported strong financial results, with organic revenue growth of 3.2%, comfortably within our long-term revenue expectation. Our solid revenues drove the robust earnings and cash flows for the fiscal year. In 2016, it is clear that VWR executed, delivered, and set the table for continued growth in 2017 and beyond.
>
> VWR plays a significant role in enhancing the business performance of both our suppliers and our customers. Suppliers value VWR's global sales and service infrastructure and our deep, direct ties into the market. Meanwhile, customers value VWR because we offer them a broad product and service portfolio, manage the supply chain for them, assist with their regulatory compliance, and give them integrated IT connectivity and advanced reporting capabilities. As we move forward, we will continue to add even more value for global customers, suppliers and by extension, for our shareholders.

33.     On May 5, 2017, VWR issued a press release wherein it reported its financial results

for the first quarter ended March 31, 2017.  The Company reported first quarter record quarterly

net sales of $1.14 billion, up 3.7% year-over-year, and up 4.3% on an organic basis.  EMEA-APAC

segment net sales increased 3.4%, up 8.4% on an organic basis, while the Americas segment net

sales increased 3.9%, up 1.7% on an organic basis.  Adjusted earnings per share were $0.44, up

10.0% compared to $0.40 in the prior year quarter.  During the quarter, the Company acquired:

Seastar, a manufacturer of high purity reagents used by global research customers; EPL Archives,

a leading global archive and biorepository services company; and MESM, a service company

providing equipment supply and ancillary consumables for customers engaged in clinical trials.

With respect to the results, Individual Defendant Brocke-Benz commented:

> The first quarter represents a strong start to the year, bolstered by our solid business momentum in EMEA-APAC and improving performance in the Americas. During

the first quarter, organic revenues increased 4.3%, with EMEA-APAC up 8.4%. Our solid revenue momentum, coupled with our adjusted operating income margin expansion, drove strong bottom-line performance.

We recently acquired EPL Archives and MESM, both of which significantly expand and strengthen our VWRCATALYST services platform. With these acquisitions, we continue to build a significant business that provides a compelling proposition to biopharma customers engaged in clinical trials activities. And earlier in the quarter, we acquired Seastar, a global quality leader in manufacturing ultra-pure acid and base products used for detecting trace elements for environmental, food and semiconductor analysis and testing. These acquisitions are an important part of our strategy to increase customer intimacy and relevance in these key growth areas.

34. Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

35. Despite a limited and inadequate "go-shop period," the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 4.03(c) of the Merger Agreement provides, in relevant part:

(c) Except as expressly permitted by this Section 4.03, with respect to any Person other than an Excluded Party, beginning on the date immediately following the Go-Shop Period End Date ("No-Shop Period Start Date"), the Company, the Company Subsidiaries and their respective directors and officers shall not, and the Company shall direct its and the Company Subsidiaries' other Representatives not to, (i) directly or indirectly solicit, initiate or knowingly encourage or facilitate any inquiries, proposals or offers with respect to or that would reasonably be expected to lead to, or the submission of, any Company Takeover Proposal, (ii) execute or enter into any agreement or understanding with respect to any Company Takeover Proposal (iii) directly or indirectly participate in any discussions or negotiations regarding, or furnish to any Person any information with respect to, or take any other action to facilitate the making of any proposal that constitutes, or would reasonably be expected to lead to, any Company Takeover Proposal, (iv) take any action to make the provisions of any Takeover Law or any restrictive provision of any applicable anti-takeover provision in the Company Charter or Company By-laws inapplicable to any transactions contemplated by a Company Takeover

7

Proposal or (v) authorize, commit or agree to do any of the foregoing. Except as otherwise expressly provided in this Agreement, from the No-Shop Period Start Date, the Company shall, and shall cause the Company Subsidiaries and its and their respective Representatives to, except with respect to any Excluded Party, immediately (i) cease all communications, solicitations, discussions and negotiations regarding any inquiry, proposal or offer that constitutes, or would reasonably be expected to lead to, a Company Takeover Proposal or otherwise in connection with an Company Takeover Proposal or potential Company Takeover Proposal, (ii) request the prompt return or destruction of all confidential information previously furnished to any Person within the last six months for the purposes of evaluating a possible Company Takeover Proposal and (iii) terminate access to any physical or electronic data rooms relating to a possible Company Takeover Proposal.

36.   Further, the Company must promptly advise Avantor of any proposals or inquiries

received from other parties. Section 4.03(f) of the Merger Agreement states:

(f) In addition to the requirements set forth in Section 4.03(c) and Section 4.03(d), from and after the No-Shop Period Start Date, the Company shall, as promptly as practicable and in any event within one business day after receipt thereof, advise Parent orally and in writing of the receipt of (i) any Company Takeover Proposal or any request for information or inquiry, proposal or offer that the Company reasonably believes would lead to or contemplates a Company Takeover Proposal and (ii) the terms and conditions of such Company Takeover Proposal or inquiry, proposal or offer (including any subsequent amendments or modifications thereto and whether made in writing or orally communicated) and the identity of the Person or group of Persons making any such Company Takeover Proposal or request, inquiry, proposal or offer. Commencing upon the provision of any notice referred to above, the Company and its Representatives shall keep Parent informed in reasonable detail on a reasonably prompt basis as to the status and details of any such Company Takeover Proposal or inquiry, proposal or offer (and any subsequent amendments or modifications thereto) and any material developments or modifications to the terms thereof.

37.   Moreover, the Merger Agreement contains a highly restrictive "fiduciary out"

provision permitting the Board to withdraw its approval of the Proposed Transaction under

extremely limited circumstances, and grants Avantor a "matching right" with respect to any

"Superior Company Proposal" made to the Company. Section 4.03(d) states:

(d) Neither the Company Board nor any committee thereof shall (i) (A) withdraw or modify in a manner adverse to Parent or Merger Sub, or propose publicly to withdraw or modify in a manner adverse to Parent or Merger Sub, the Company

8

Board Recommendation, (B) approve or recommend, or propose publicly to approve or recommend, any Company Takeover Proposal, (C) fail to publicly reaffirm, up to a maximum of two times ( provided that, Parent shall be entitled to an additional two such reaffirmations for each Intervening Event or publicly announced change to any material term of a Company Takeover Proposal), the Company Board Recommendation within five (5) business days after Parent so requests in writing (or such fewer number of days as remain prior to the Stockholders Meeting, as it may be adjourned or postponed in accordance with this Agreement), (D) fail to recommend in a Solicitation/Recommendation Statement on Schedule 14D-9 rejection of a Company Takeover Proposal that is a tender offer or exchange offer subject to Regulation 14D under the Exchange Act (other than by Parent and its affiliates) within ten (10) business days of the commencement of such tender offer or exchange offer (or such fewer number of days as remain prior to the Stockholders Meeting, as it may be adjourned or postponed in accordance with this Agreement) or (E) resolve, publicly announce an intention or agree to take any of the foregoing actions (any action described in this clause (i) being referred to herein as an "Adverse Recommendation Change") or (ii) approve or enter into any letter of intent, memorandum of understanding, agreement in principle, acquisition agreement, option agreement, merger agreement, joint venture agreement, partnership agreement or other agreement providing for any Company Takeover Proposal (other than an Acceptable Confidentiality Agreement entered into in accordance with Section 4.03(a) or Section 4.03(c)), or resolve, agree or publicly propose to take any such action. Notwithstanding anything to contrary in the foregoing or any other provision of this Agreement, at any time prior to, but not after, the Company Requisite Vote has been obtained (x) the Company Board may, in response to an Intervening Event, take or fail to take any of the actions specified in clauses (A), (C), (D) or (E) of the definition of Adverse Recommendation Change (an "Intervening Event Adverse Recommendation Change") if the Company Board determines, in good faith, after consultation with outside counsel, that the failure to take such action would be reasonably likely to be inconsistent with its fiduciary duties under applicable Law and (y) if the Company Board receives a Superior Company Proposal, the Company may terminate this Agreement pursuant to Section 7.01(f) to enter into a definitive agreement with respect to such Superior Company Proposal (provided that concurrently with such termination the Company pays any Company Termination Fee to be made pursuant to Section 5.05(b)); provided that, prior to so making an Intervening Event Adverse Recommendation Change or so terminating this Agreement, (1) the Company shall have materially complied with this Section 4.03, (2) the Company Board shall have given Parent at least four business days' prior written notice of its intention to take such action and a description of the reasons for taking such action (which notice, in respect of a Superior Company Proposal, shall specify in writing the identity of the Person or group of Persons who made such Superior Company Proposal and all of the material terms and conditions of such Superior Company Proposal and attach the most current version of the relevant transaction agreement and other material definitive documents (including financing commitments)), (3) the Company shall have negotiated, and shall have caused its Representatives to negotiate in good

faith, with Parent during such notice period, to the extent Parent wishes to negotiate, to enable Parent to revise the terms of this Agreement in such a manner that would eliminate the need for taking such action (and in respect of a Superior Company Proposal, would cause such Superior Company Proposal to no longer constitute a Superior Company Proposal), (4) following the end of such notice period, the Company Board shall have considered in good faith any revisions to the terms of this Agreement offered in writing by Parent, and shall have determined in good faith, after consultation with outside counsel, that failure to effect such Company Intervening Event Adverse Recommendation Change or to terminate this Agreement to accept such Superior Company Proposal would be reasonably likely to be inconsistent with its fiduciary duties under applicable Law and, with respect to a Superior Company Proposal, that such Superior Company Proposal continues to constitute a Superior Company Proposal and (5) in the event of any material change to any of the terms or conditions of such Superior Company Proposal, the Company shall, in each case, deliver to Parent an additional notice consistent with that described in clause (2) of this proviso and a renewed notice period under clause (2) of this proviso shall commence (except that the four-business-day notice period referred to in clause (2) of this proviso shall instead be equal to two business days) during which time the Company shall be required to comply with the requirements of this Section 4.03(d) anew with respect to such additional notice, including clauses (1) through (4) of this proviso.

38.     Further locking up control of the Company in favor of Avantor, the Merger Agreement provides for a "termination fee" of up to $170 million, payable by the Company to Avantor if the Individual Defendants cause the Company to terminate the Merger Agreement.

39.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

40.     Additionally, Varietal Distribution Holdings, LLC ("VDH") has entered into a voting and support agreement with Parent and Merger Sub, pursuant to which VDH has agreed to vote its Company shares in favor of the Proposed Transaction. Accordingly, approximately 34.8% of the Company's shares are already locked up in favor of the merger.

41.     The consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

42.     Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

43.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

44.     Meanwhile, certain of the defendants stand to receive significant benefits as a result of the Proposed Transaction.

45.     For example, the Company's executive officers will receive retention bonuses as high as $5 million.

46.     Moreover, Individual Defendant Brocke-Benz stands to receive golden parachute compensation in the amount of $25,735,449 in connection with the merger, and the Company's other named executive officers stand to receive over $25.6 million.

47.     Additionally, New Mountain Capital will be the lead shareholder of the combined company.

**_The Proxy Statement Omits Material Information, Rendering It False and Misleading_**

48.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

49.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

50.     First, the Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"), in support of its so-called fairness opinion.

51.     With respect to VWR's financial projections, the Proxy Statement fails to disclose: (i) unlevered free cash flows, the definition of unlevered free cash flow, and the line items used in calculating unlevered free cash flow; (ii) net income; (iii) interest expense; (iv) income tax provision/benefit; (v) depreciation and amortization; (vi) net foreign currency remeasurement gains/losses relating to financing activities; (vii) losses on extinguishment of debt; (viii) equity offering costs; (ix) charges associated with restructurings and other cost reduction initiatives; (x) impairment charges; (xi) gains/losses upon business disposals; (xii) share-based compensation expense; (xiii) amortization of acquired intangible assets; (xiv) income from changes to estimated fair value of contingent consideration; (xv) other costs/credits; and (xvi) a reconciliation of all non-GAAP to GAAP metrics.

52.     With respect to BofA Merrill Lynch's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:  (i) the standalone unlevered, after-tax free cash flows for VWR; (ii) the definition of unlevered after-tax free cash flow and the constituent line items: (iii) the terminal values for VWR; and (iv) the inputs and assumptions underlying the discount rate range of 7.75% to 9.25%.

53.     With respect to BofA Merrill Lynch's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by BofA Merrill Lynch in the analysis.

54.     With respect to BofA Merrill Lynch's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by BofA Merrill Lynch in the analysis.

55.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

56.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; (iii) "Certain Prospective Financial Information"; and (iv) "Opinion of the Company's Financial Advisor."

57.     Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

58.     Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of VWR's officers and directors, including who participated in all such communications.

59.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

60.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; and (iii) "Interests of the Company's Directors and Executive Officers in the Merger."

61.     Third, the Proxy Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

62.     For example, the Proxy Statement fails to disclose the terms and value of "Party A's" "initial interest," which was "at a value that BofA Merrill Lynch thought would be acceptable to VWR stockholders."

63.     Additionally, the Proxy Statement fails to provide a fair summary of the analyses BofA Merrill Lynch performed for Party A in connection with Party A's potential acquisition of the Company.

64.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; and (ii) "Recommendation of the Board and Reasons for the Merger."

65.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to VWR's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and VWR

66.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  VWR is liable as the issuer of these statements.

68.     The Proxy Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

69.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

70.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

71.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

72.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

73.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Avantor

74.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75.     The Individual Defendants and Avantor acted as controlling persons of VWR within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of VWR and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly,

the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

76.     Each of the Individual Defendants and Avantor was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Proxy Statement.

78.     Avantor also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

79.     By virtue of the foregoing, the Individual Defendants and Avantor violated Section 20(a) of the 1934 Act.

80.     As set forth above, the Individual Defendants and Avantor had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction. rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  June 13, 2017

OF COUNSEL:

**RIGRODSKY & LONG, P.A.**
Brian D. Long (PA Bar No. 82370)
Gina M. Serra (PA Bar No. 308207)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**

By: _____
       Richard A. Maniskas (PA Bar No. 85942)
       1055 Westlakes Drive, Suite 3112
       Berwyn, PA 19312
       (484) 324-6800

       *Attorneys for Plaintiff*

17

## CERTIFICATION OF PLAINTIFF

I, ROBERT BERG ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1.      Plaintiff has reviewed the complaint and authorizes its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary.  I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4.      Plaintiff's purchase and sale transactions in the VWR Corporation (NasdaqGS: VWR) security that is the subject of this action during the class period is/are as follows:

<table>
<tr><td colspan="3" align="center">**PURCHASES**</td><td colspan="3" align="center">**SALES**</td></tr>
<tr><td>**Buy Date**</td><td>**Shares**</td><td>**Price per Share**</td><td>**Sell Date**</td><td>**Shares**</td><td>**Price per Share**</td></tr>
<tr><td>10/11/16</td><td>60</td><td>$27.55</td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td></tr>
</table>

*Please list additional transactions on separate sheet of paper, if necessary.*

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.      During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of June, 2017.

_____
ROBERT BERG